1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9
10
11

PATRICK K. G.,[1]

Case No.  SA CV 18-01156-RAO

12

Plaintiff,

13

v.

**MEMORANDUM OPINION AND ORDER**

14

ANDREW M. SAUL, Commissioner of Social Security,

15

Defendant.

16
17

## I.   INTRODUCTION

Plaintiff Patrick K. G. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.   PROCEEDINGS BELOW

On April 15, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning January 11, 2013.  (Administrative Record ("AR") 524-27.) Plaintiff later amended his alleged onset date to December 7, 2014.  (*See* AR 636.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

His application was denied initially on September 11, 2015, and upon reconsideration on January 5, 2016. (AR 452, 460.) On January 25, 2016, Plaintiff filed a written request for hearing, and a hearing was held on August 29, 2017. (AR 81, 467.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 83-113.) On September 12, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] since December 7, 2014. (AR 74-75.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on June 29, 2018. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2014, the alleged onset date ("AOD"). (AR 63.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis of the left knee; a history of rotator cuff syndrome; obesity; and sleep apnea. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 65.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform medium work . . . except he can frequently climb stairs and ramps and occasionally climb ladders, ropes and scaffolds. He can frequently balance, stoop, kneel, crouch and crawl. He can have

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

frequent exposure to conditions of extreme heat and pulmonary irritants such as dusts, odors, fumes and the like.

(AR 66.) At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 72.) At **step five**, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 73.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of decision. (AR 74-75.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

IV. **DISCUSSION**

Plaintiff raises the following issues for review: (1) whether the RFC assessment is supported by substantial evidence; and (2) whether the ALJ properly evaluated Plaintiff's subjective complaints. (*See* Joint Submission ("JS") 4.) For the reasons below, the Court affirms.

A. **The ALJ Properly Evaluated Plaintiff's Subjective Complaints[3]**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective testimony. (JS 13-14.) The Commissioner argues that the ALJ provided legally sufficient reasons for discounting Plaintiff's complaints. (JS 14-19.)

1. **Plaintiff's Testimony**

Plaintiff last worked installing solar panels in 2013. (AR 89.) He injured his knee and back, and he could no longer do the job. (AR 90.) Plaintiff saw an orthopedic surgeon for pain management and therapy. (*Id.*) He was laid off or terminated from his job, but he still received medical care for five years. (*Id.*)

Plaintiff drove himself to the hearing. (AR 88.) He lives in his own home with his wife, son, and grandson. (AR 91.) Plaintiff also has two houses, which he inherited from his parents, that he rents for income. (AR 91, 93.) Plaintiff writes a receipt when a tenant mails a check, and his son does the maintenance for the rental properties. (AR 92.) Plaintiff explained that he keeps the rent low as an incentive

---

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

for tenants to take care of their own minor maintenance. (*See* AR 93.) Plaintiff hires a contractor for large jobs, such as plumbing. (AR 92.)

Plaintiff testified that, according to his doctor, Plaintiff's blood pressure and cholesterol are high due to his weight. (AR 87-88.) Plaintiff's painkillers make it hard to lose weight. (AR 88.) Plaintiff also has sleep apnea, and he uses a CPAP machine. (AR 97.)

Plaintiff stated that he has problems waking up because his medication makes him groggy. (AR 94.) He usually stays home with his wife or grandson. (*Id.*) Plaintiff's grandson, who is disabled, goes to school during the day. (AR 94-95.) When his grandson is home, Plaintiff gets him milk and changes his diapers. (AR 95.) Plaintiff explained that he does not need to lift his grandson, and when he changes his diapers, his grandson lifts his own feet up. (AR 105.)

Plaintiff tries to do as much cooking, cleaning, laundry, and yard work as he can, but he is "discouraged now because [he] can't do it." (AR 95.) He explained that his yard is overgrown. (AR 96.) Plaintiff needs help putting on his socks and shoes. (AR 104.)

According to Plaintiff, his neurologist says that Plaintiff has nerve damage from his legs "all the way up." (AR 96.) Plaintiff also has problems with his neck, back, and legs. (*Id.*) Plaintiff's knees give out, and he almost falls to the ground. (*Id.*) Plaintiff is receiving alignments, heat treatments, and electro stimulus for his back. (AR 99.) He was prescribed a brace for his left knee. (*Id.*) Plaintiff stated that he sometimes cannot pick up a cup of coffee because of the arthritis in his wrists. (AR 96.) Plaintiff also stated that he has hearing loss due to the equipment used when Plaintiff was a machinist and worked in construction. (AR 97.) Plaintiff explained that he cannot hear certain frequencies. (AR 105.) He has been prescribed hearing aids, but he cannot afford them. (*Id.*)

Plaintiff testified that he can stand for about ten minutes before he needs to change position. (AR 103.) With medication, he can stand for a half hour to an hour,

and he can sit for up to an hour. (AR 103-04.) According to Plaintiff, he can lift about ten pounds. (*Id.*)

### 2. Plaintiff's Function Report

Plaintiff submitted a Function Report in May 2015, which was written in the first person but was completed by a third party. (AR 593-601.) Plaintiff explained that he has severe pain in his lower back and left knee, which makes it painful for him to walk, stand, sit, bend, climb, or kneel. (AR 593.) Plaintiff also gets migraines, cannot hear well, is depressed, and has blurry vision, among other ailments. (*Id.*)

During the day, Plaintiff does "a little walking." (AR 594.) He attempts housework and yard work, but he needs to stop and rest after thirty minutes. (*Id.*) Plaintiff explained that it can take him several hours to do laundry, mow the yard, or clean when he is not in a lot of pain, and he needs to stop and rest. (AR 595.) When Plaintiff starts chores but cannot complete them, a family member finishes them for him. (*Id.*) Plaintiff goes to the market to do some shopping and goes to the pharmacy for his medications. (AR 594, 596.) Plaintiff also rests and watches television, but he cannot sit for very long. (AR 594.) Plaintiff has trouble dressing and sometimes needs help bathing. (*Id.*) His wife reminds him to shower, dress, and take his medications. (AR 595.) Plaintiff can prepare sandwiches, frozen dinners, microwavable dishes, and a cup of soup. (*Id.*) He is able to pay bills, count change, and handle a savings account. (AR 596.)

Plaintiff tries to walk at the mall and go to church once a week. (AR 597.) He went fishing with his son two or three times in the prior six months. (*Id.*) He also goes camping about once a year and swims when he is not in a lot of pain. (*Id.*)

Plaintiff's condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, remember, concentrate, understand, follow instructions, and get along with others. (AR 598.) Plaintiff can slowly walk about two to three blocks before needing to rest for ten to fifteen minutes. (*Id.*) He sometimes cannot understand or remember instructions, and he does not handle stress or changes in

routine well. (AR 598-99.) Plaintiff was prescribed a knee brace in 2013, which he uses "all the time," especially when he walks. (AR 599.) Plaintiff was also prescribed new glasses in February 2015, but he could not get them due to his finances. (*Id.*)

### 3. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Lingenfelter*, 504 F.3d at 1036). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 4. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 67.) The ALJ relied on the following reasons: (1) activities of daily living; and (2) lack of supporting objective medical evidence. (AR 67-70.) No malingering allegation was made, and therefore the ALJ's reasons must be "clear and convincing."

### a.    The Commissioner's Arguments

Preliminarily, the Court addresses the Commissioner's contention that the ALJ "properly considered five legally valid factors." (JS 15.) In addition to Plaintiff's activities of daily living and objective medical evidence, the Commissioner relies on the ALJ's statements regarding Plaintiff's lack of treatment, the ALJ's own observations at the hearing, and Plaintiff's improvement with treatment. (JS 17-19.)

According to the Commissioner, the ALJ discounted Plaintiff's subjective complaints due to Plaintiff's lack of treatment for his mental and physical conditions, and the ALJ reasonably considered that his own observations at the hearing contradicted Plaintiff's alleged impairments. (JS 17-18.) In arguing these points, the Commissioner cites the ALJ's "step two" determination that Plaintiff's mental impairments are nonsevere. (JS 17-18 (citing AR 64-65).) Because these issues were not discussed along with the ALJ's discussion of Plaintiff's symptom testimony, they are not considered to be proper credibility findings. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 n.10 (9th Cir. 2017).

The Commissioner also contends that the ALJ reasonably considered that Plaintiff's physical condition improved with treatment. (JS 18.) However, the ALJ made this observation when objectively summarizing Plaintiff's medical records (AR 67), and he did not connect the evidence to Plaintiff's symptoms or testimony. The ALJ must explain which symptoms are inconsistent with the evidence of record and must explain how his evaluation of the symptoms led to that conclusion. *See* SSR 16-3p, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016); *Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). The determination must contain specific reasons for the weight given to the individual's symptoms and must clearly articulate how the ALJ evaluated the claimant's symptoms. 2016 WL 1119029, at *9; *see Lester*, 81 F.3d at 834 ("General findings are insufficient.").

///

Because the ALJ did not connect this evidence to any of Plaintiff's symptom testimony, these reasons are not clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility.

### b. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff's reported daily activities are inconsistent with the extent of his allegations. (AR 70.) Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ noted that Plaintiff can "prepare simple meals." (AR 70.) But Plaintiff described making sandwiches, frozen dinners, microwavable dishes, and a cup of soup. (AR 595.) Plaintiff's meal preparation does not require a substantial amount of time or effort, and the ALJ failed to explain how this translates into an ability to perform regularly in the workplace. Similarly, regarding the ALJ's reliance on Plaintiff's ability to manage his two rental properties, the ALJ failed to explain how collecting rent checks and hiring contractors for repairs (*see* AR 91-93) are inconsistent with Plaintiff's limitations or are transferrable to the workplace. *See Orn*, 495 F.3d at 639 (stating that an ALJ erred in rejecting a claimant's testimony due to daily activities that were "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace").

On the other hand, the ALJ observed that Plaintiff is not precluded from mowing his yard or driving a vehicle, "which involves lowering into and rising from

a seated position, twisting, reaching and operating foot pedals." (AR 70.) The ALJ also noted that Plaintiff walks at the mall once a week, fishes every other month, and camps once a year. (*Id.*) Finally, the ALJ considered Plaintiff's ability to care for his disabled grandson, including feeding him and changing his diapers. (*Id.*) The ALJ was permitted to consider inconsistencies between these activities and Plaintiff's allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming an ALJ's adverse credibility determination, despite "equivocal" testimony about how regularly the claimant engaged in her activities, because the ALJ's interpretation was reasonable); *cf. Trevizo*, 871 F.3d at 682 (finding that childcare responsibilities did not undermine a claimant's symptom testimony when there was "almost no information in the record about [the claimant]'s childcare activities").

In sum, the Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (citations omitted)); *see also Williams v. Comm'r Soc. Sec. Admin.*, No. 6:16-CV-01543-MC, 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination." (citing *Batson*, 359 F.3d at 1196)).

### c. Reason No. 2: Lack of Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681.

The ALJ found that Plaintiff's testimony regarding his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." (AR

67.) The ALJ then summarized Plaintiff's medical records, concluding that "the evidence of record does not support the full extent of [Plaintiff's] allegations." (AR 70.)

Plaintiff injured his left knee in August 2012, but he retained a normal gait, normal range of motion, and full weightbearing in both legs. (*See* AR 660-61.) Plaintiff received conservative treatment consisting of anti-inflammatories, an injection, a brace, and physical therapy. (*See* AR 1045.) Later treatment notes document crepitus, but Plaintiff otherwise had normal range of motion, gait, strength, and reflexes. (*See, e.g.*, AR 793, 908, 918, 920, 1052, 1209, 1277, 1283-84.) X-rays showed "some symmetrical compartmental narrowing," but the patellofemoral compartments were "pretty much unremarkable." (AR 1052.)

Plaintiff also injured his lower back in 2012. (*See* AR 789, 1100.) Plaintiff had a reduced range of motion with muscle spasm, but he also had a normal gait and posture without weakness in the lower extremities. (AR 1100, 1159, 1167.) Plaintiff also had no deformity of the spine or pelvis, normal reflexes, intact sensation, and negative straight leg raising. (AR 646, 1100, 1110, 1137, 1143, 1159, 1283-84.) Plaintiff reported improvement after physical therapy in early 2013. (AR 1105.) A December 2013 MRI revealed normal alignment and cord signal intensity, normal spine canal diameter, and no evidence of lesions or fracture. (AR 1073.) Plaintiff had minimal disc height loss at L4-L5, and the remainder of the intervertebral body discs demonstrated normal height with minimal desiccation and no significant neural foraminal stenosis. (AR 1073-74.) An x-ray of Plaintiff's lumbar spine was "essentially within normal limits," with no evidence of spondylolysis or spondylolisthesis. (AR 1284-85.) A February 2014 nerve conduction was negative. (AR 1075.) In September 2014, Plaintiff's clinical response had improved as it relates to radiculopathy. (AR 1064.) In July 2015, Plaintiff had mild tenderness but no spasm and no low back pain with axial compression. (AR 792.) Plaintiff also had normal motor function, sensation, and reflexes with negative straight leg raising

11

bilaterally. (AR 793-94.) X-rays of the lumbar and cervical spine were "completely unremarkable," and an examining physician noted that objectively, Plaintiff has no abnormal findings. (AR 794.) A July 2016 x-ray also showed only mild degenerative spurring at L2-L3, with no compression fractures or spondylolysis. (AR 904.) An x-ray of Plaintiff's cervical spine was unremarkable. (AR 906.) Although Plaintiff described neck pain and stiffness, records show only "mild" or "subtle" changes, no evidence of radiculopathy, no evidence of deformity, and no tenderness or spasm. (AR 792, 794, 885, 1046, 1304-05, 1314-15.) In December 2016, Plaintiff had normal reflexes, grossly intact strength in the upper extremities, full grip strength, and normal circulation. (AR 893.)

In late 2016, treatment notes began referencing Plaintiff's shoulder pain. (AR 920.) Plaintiff had full range of motion of the shoulders with good muscle strength and circulation in the upper extremities. (AR 1314.)

Plaintiff has been diagnosed with sleep apnea since at least 2008, but he was noncompliant with his treatment and did not use his CPAP machine. (AR 784.) Plaintiff was advised to lose weight to improve his sleep apnea. (AR 774.)

The ALJ thoroughly considered Plaintiff's medical records and found that they did not support Plaintiff's allegations of disabling symptoms and limitations. *See Reddick*, 157 F.3d at 725. The ALJ was permitted to rely on the normal examination results and lack of significant medical findings in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations).

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

**B.**     **The RFC Determination is Supported by Substantial Evidence**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c); *see*

*Robbin*s, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 66.)

### 1. Opinion Evidence[4]

Plaintiff argues that the ALJ improperly gave partial weight to the opinion of Jeffrey A. Berman, M.D., and erred in relying on other medical opinions. (JS 5-6, 12.) The Commissioner argues that the ALJ correctly weighed the medical opinions. (*See* JS 7-11.)

### a. Legal Standards

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

---

[4] Plaintiff does not challenge the ALJ's evaluation of Behnam Khalegi, M.D.'s opinion (*see generally* JS 4-7, 12), and thus that issue is not before this Court. *See Carmickle*, 533 F.3d at 1161 n.2.

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

### b.     Jeffrey A. Berman, M.D.

In September 2014, Dr. Berman evaluated Plaintiff for his workers' compensation claim. (*See* AR 1044-70.) Plaintiff contends that this is "[t]he most comprehensive opinion" regarding Plaintiff's limitations, and it is not consistent with other opinions that limited Plaintiff to medium, rather than light, work. (JS 6.) According to Plaintiff, Dr. Berman's opinion suggests "an RFC closer to light work" due to the bending, stooping, and weight-bearing limitations. (JS 6; *see* JS 12.) Specifically, Dr. Berman assessed that Plaintiff should avoid heavy lifting, repetitive bending and stooping, running, jumping, prolonged weight-bearing, and repetitive or prolonged squatting, kneeling, climbing, pivoting, and working on uneven terrain. (AR 1065.) He assessed a 23-percent whole person impairment. (AR 1066.)

However, as the ALJ noted (AR 71), Dr. Berman did not define all of his terms. Dr. Berman precluded Plaintiff from "repetitive" bending and stooping. (AR 1065.) In contrast, the ALJ's RFC determination limits Plaintiff to "frequent" stooping, kneeling, crouching, and crawling. (AR 66.) Dr. Berman also precluded Plaintiff from "heavy lifting." (AR 1065.) Plaintiff contends that this supports a limitation to light work, which involves lifting no more than 20 pounds at a time, with frequent lifting or carrying objects up to 10 pounds. 20 CFR § 404.1567(b). Instead, the ALJ

found that Plaintiff was able to perform medium work, which involves lifting no more than 50 pounds at a time, with frequent lifting or carrying objects up to 25 pounds. 20 CFR § 404.1567(c).

It is the duty of the ALJ to resolve conflicts in the evidence. *See Tommasetti*, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Here, the ALJ's interpretation of Dr. Berman's undefined terms is reasonable, and it must be upheld. *See Ryan*, 528 F.3d at 1198 (an ALJ's decision should be upheld "[w]here evidence is susceptible to more than one rational interpretation"). Accordingly, the Court finds that the ALJ properly evaluated Dr. Berman's opinion.

### c.     State Agency Consultants

State agency consultant Soraya Amanullah, Ph.D. reviewed Plaintiff's application with respect to psychiatric impairment. (*See* AR 428-29.) Dr. Amanullah found that Plaintiff had mild to no mental limitations. (AR 429.) The ALJ gave this opinion great weight because it was well reasoned and consistent with the record as a whole. (AR 70.) State agency consultant G. Spinka, M.D. initially reviewed Plaintiff's application (*see* AR 427-32), and R. Weeks, M.D. reviewed the application upon reconsideration (*see* AR 444-46). Dr. Spinka found that Plaintiff could perform medium work with frequent postural activities, but Plaintiff must avoid concentrated exposure to vibrations and pulmonary irritants. (AR 430-32.) Dr. Weeks agreed, but he found that Plaintiff could occasionally climb ladders, ropes, and scaffold. (AR 447-48.) The ALJ gave great weight to both opinions, finding that they were largely consistent with the record as a whole. (AR 71.) The ALJ also noted that the opinions were similar to those of the independent orthopedic consultative examiner and a final workers' compensation assessment. (*Id.*)

Plaintiff contends that the opinions of Dr. Amanullah, Dr. Spinka, and Dr. Weeks do not provide substantial evidence to support the RFC because the physicians did not have an opportunity to review records, including Dr. Berman's report, after

January 5, 2016.  (JS 5.)  However, the ALJ properly reviewed the entire record and found that Dr. Berman's specific limitations were "broadly consistent with the evidence as a whole." (AR 71).  *See Sportsman v. Colvin*, 637 F. App'x 992, 995 (9th Cir. 2016) (stating that it is not error for a state agency consultant to fail to review subsequent medical records if the ALJ reviews the entire record and concludes that the later-dated medical records are consistent with the overall medical evidence).  Thus, the ALJ did not err in assigning great weight to the opinions of Dr. Amanullah, Dr. Spinka, and Dr. Weeks.  *See Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to non-examining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities"); *see also Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) ("[T]he reports of consultative physicians called in by the Secretary may serve as substantial evidence.").

### d.    Consultative Examiners

Psychiatric consultative examiner Norma Aguilar, M.D. completed an examination of Plaintiff in July 2015.  (AR 801-05.)  Dr. Aguilar found that Plaintiff had only mild limitations and his prognosis was good.  (AR 804-05.)  The ALJ gave this opinion great weight because it was consistent with the evidence as a whole.  (AR 70.)  The ALJ also noted that Dr. Aguilar was able to examine Plaintiff, administer tests, and obtain first-hand observations.  (*Id.*)  Orthopedic consultative examiner Ibrahim Yashruli, M.D. completed an examination of Plaintiff in July 2015.  (AR 789-95.)  Dr. Yashruli found that Plaintiff could perform medium work.  (*See* AR 794-95.)  The ALJ gave this opinion "great, but slightly less weight" because it was consistent with the state agency opinions and generally consistent with treatment notes and Plaintiff's reported activities.  (AR 71.)  However, the ALJ incorporated additional postural and environmental limitations.  (*Id.*)

///

1   Plaintiff notes that the consultative examiners did not review Plaintiff's

2   medical records. (JS 5.) But Dr. Aguilar's and Dr. Yashruli's opinions alone may

3   constitute substantial evidence because they are based on the doctors' own

4   independent examinations of Plaintiff. *See Tonapetyan v. Halter*, 242 F.3d 1144,

5   1149 (9th Cir. 2001). Plaintiff has therefore identified no error.

6   **2.    Objective Medical Evidence**

7   As discussed above in connection with Plaintiff's subjective complaints, the

8   ALJ thoroughly reviewed the medical records submitted to him.

9   Plaintiff also submitted additional records to the Appeals Council. (*See* AR

10   2.) The Appeals Council stated: "We find this evidence does not show a reasonable

11   probability that it would change the outcome of the decision. We did not consider

12   and exhibit this evidence." (*Id.*)

13   When the Appeals Council considers new evidence in denying review of the

14   ALJ's decision, this Court considers on appeal both the ALJ's decision and the

15   additional material submitted to the Appeals Council. *Ramirez v. Shalala*, 8 F.3d

16   1449, 1452 (9th Cir. 1993); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

17   1157, 1163 (9th Cir. 2012) ("[W]e have routinely considered evidence submitted for

18   the first time to the Appeals Council to determine whether, in light of the record as a

19   whole, the ALJ's decision was supported by substantial evidence."); *Decker v.*

20   *Berryhill*, 856 F.3d 659, 664 (9th Cir. 2017) (citing *Brewes*, 682 F.3d at 1163-64).

21   Plaintiff argues that the Appeals Council erred in stating that it did not consider

22   and exhibit his additional evidence because "in order for [the Appeals Council] to

23   reach the conclusion that [the additional evidence] did not show a reasonable

24   probability that it would change the outcome of the decision, the Appeals Council

25   necessarily had to consider this evidence."[5] (JS 7.) The Court agrees. Although the

26   [5] Plaintiff does not challenge the Appeals Council's refusal to consider treatment
27   records that postdated the ALJ's decision. (*See* AR 2.) In any event, the Appeals
    Council correctly stated that this evidence does not affect the disability
28   determination. *See* 20 CFR §§ 404.970(b), 416.1470(b) ("If new material evidence

Appeals Council stated that it "did not consider" Plaintiff's new evidence, it appears that the Appeals Council necessarily did consider the evidence in order to determine that it "does not show a reasonable probability that it would change the outcome of the decision." The Court therefore addresses this additional evidence in the record. *See Reyes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08192-PCT-SMB, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019); *Mayeda-Williams v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-0009-HRH, 2019 WL 157918, at *5 (D. Alaska Jan. 10, 2019).

According to Plaintiff, "[r]ecords during the relevant period reveal the presence of crepitus in both knees and painful external rotation of the hips, paracervical muscle spasm and moderate cortical atrophy of the brain (somewhat more expected for age)."[6] (JS 7.) The Court has reviewed the records cited by Plaintiff and finds that the ALJ's decision continues to be supported by substantial evidence. While Plaintiff accurately describes some treatment notes (*see* AR 139, 150, 162-63), these records also show that Plaintiff also had no peripheral joint synovitis or joint deformities (AR 139), good proximal and distal muscle strength (*id.*), no atrophy (AR 150), and unremarkable brainstem and cerebellum (AR 162). Additionally, crepitus and painful external rotation of the hips were previously documented in other treatment notes that the ALJ did consider. (AR 908, 918, 920; *see* AR 68.) The Court therefore finds that the objective medical evidence continues

---

is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").

[6] The Court has limited its review to the issues identified by Plaintiff. *See Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008) (the Court need not address arguments that a claimant failed to argue with any specificity); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the Court "cannot 'manufacture arguments for an appellant'" and only reviews "'issues which are argued specifically and distinctly'" (citations omitted)); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (the Court need not consider arguments that are "too undeveloped to be capable of assessment"), *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003).

to support the RFC determination.  *See Batson*, 359 F.3d at 1193 (the Court must defer to the Commissioner's decision if evidence exists to support more than one rational interpretation of the record).

### 3.     Conclusion

In sum, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.  *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

## V.     **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  June 26, 2019

_Rozella A. Oliver_
_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**